JOSEPH D. WOJTONIK, Plaintiff-Appellee, v. ILLINOIS CENTRAL
RAILROAD, Defendant-Appellant.

Fifth District    No. 5—93—0130

Opinion filed September 15, 1994.

Paul M. Brown and Kathy A. Wisniewski, both of Coburn & Croft, of St. Louis, Missouri, for appellant.

John P. Kujawski and Christine E. Anderson, both of Kujawski & Faerber, P.C., of Belleville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Illinois Central Railroad (ICC) appeals from the denial of its motion to transfer venue from Madison County to Cook County on the grounds of *forum non conveniens*. We affirm.

Plaintiff, a resident of Chicago, has been employed by ICC for approximately 25 years and has been assigned to ICC's Glenn yard in Cook County since 1979. ICC owns and operates railroad tracks, yards, and cars throughout Illinois. ICC's Glenn yard is located in Cook County. On September 12, 1989, Wojtonik was working at ICC's IMX yard, also located in Cook County, when he allegedly injured his back. There were no eyewitnesses to the accident. On September 14, 1989, plaintiff consulted Dr. Fernando Lopez in Cook County, and he was admitted to Christ Hospital & Medical Center in Oaklawn, Cook County, Illinois. Subsequently, plaintiff consulted with Dr. Schreiber of Madison County, and he is currently treating with Dr. Schreiber.

Defendant claims that there is no connection between plaintiff's accident and Madison County. The accident occurred in Cook County, plaintiff resides in Cook County, and all of the witnesses, with the exception of Dr. Schreiber, reside in Cook County. Defendant argues that the presence of a single treating physician within the chosen forum is not sufficient to defeat defendant's motion to transfer based on *forum non conveniens*, especially where there is nothing in the record to indicate when plaintiff began treating with Dr. Schreiber or the extent of treatment rendered by that physician.

Plaintiff's right to chose a forum is a substantial one that should rarely be disturbed unless public-interest factors and private-interest factors weigh strongly in favor of transfer. (*Mowen v. Illinois Valley Supply Co.* (1994), 257 Ill. App. 3d 712, 714, 629 N.E.2d 176, 178.) Although there is authority that a plaintiff's choice of forum should be accorded less deference when he does not reside there (*Washington v. Illinois Power Co.* (1991), 144 Ill. 2d 395, 400, 581 N.E.2d 644, 646), less deference does not mean no deference, and the presumption exists that plaintiff's chosen forum is convenient for him. *Hoffmeister v. K mart Corp.* (1989), 181 Ill. App. 3d 739, 742-43, 537 N.E.2d 460, 462.

In ruling on motions to transfer venue based on intrastate *forum non conveniens*, a trial court must consider both the private

interests affecting the convenience to the litigants and the public interests affecting the administration of the courts. Regarding private interests:

> " 'Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.' " (*Torres v. Walsh* (1983), 98 Ill. 2d 338, 345, 456 N.E.2d 601, 604, quoting *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 508, 91 L. Ed. 1055, 1062, 67 S. Ct. 839, 843.)

The public-interest factors include:

> "the administrative difficulties flowing from court congestion; 'a local interest in having localized controversies decided at home'; and the unfairness of burdening citizens in an unrelated forum with jury duty." (*Bland v. Norfolk & Western Ry. Co.* (1987), 116 Ill. 2d 217, 224, 506 N.E.2d 1291, 1294, quoting *Gulf Oil*, 330 U.S. at 509, 91 L. Ed. at 1063, 67 S. Ct. at 843.)

Unless these factors strongly favor the defendant, the plaintiff should be allowed to exercise his choice in deciding in what forum to bring the case, provided venue is proper. *Torres*, 98 Ill. 2d at 351, 456 N.E.2d at 607.

■ Examining the private-interest factors involved, the parties agree that venue is proper in either Cook or Madison County. Regarding access to sources of proof and the availability and cost of obtaining witnesses, the only eyewitness to the alleged accident was the plaintiff, and according to the record the only other fact witness identified to date is D.R. Veldhuizen, the foreman at the jobsite where plaintiff was injured. Veldhuizen resides in Cook County, and as he is employed by the defendant, it is logical to assume that ICC could produce him at the time and place of trial if it chooses. (See *Brummett v. Wepfer Marine, Inc.* (1986), 111 Ill. 2d 495, 490 N.E.2d 694.) Although plaintiff was initially examined after the accident at a Cook County medical facility by doctors who reside in Cook County, plaintiff's current treating physician, Dr. Schreiber, is located in Madison County. While defendant contends that cost considerations in transporting the witnesses to Madison County militate against Madison County as a proper forum, we do not think this private-interest factor so heavily weighs in defendant's favor as to justify a change of venue. All of the witnesses are subject to compulsory process, and if need be evidence depositions could be taken. In addition, we need not ignore the cost and inconvenience of the parties' attorneys in trying

this case in Cook County. Plaintiff's attorney's office is in St. Clair County, and the defendant's attorney's office is in St. Louis, Missouri. Both offices are considerably closer to Madison County than to Cook County.

As for any relevant personnel, safety, employment, or other documents concerning this cause of action, such are readily available to ICC as they are contained within its own files. Finally, although defendant argues that a jury view of the accident scene could be ordered by the trial court, there is nothing in the record to suggest that a jury view would be helpful or relevant.

■ Like the private-interest factors, the public-interest factors do not weigh heavily in favor of transferring this cause to Cook County. Imposition of jury duty on the community and the local interest in having the cause tried in a particular forum do not weigh strongly in favor of Cook County. Madison County has an interest in and factual connections with this cause of action. ICC maintains a business presence in Madison County; ICC owns and operates railroad track, yards, and cars throughout Illinois and engages in railroad activity in plaintiff's chosen forum. Madison County, therefore, has an interest in protecting against the negligent operation of ICC trains that may travel through the vicinity. See *Griffith v. Mitsubishi Aircraft International, Inc.* (1990), 136 Ill. 2d 101, 554 N.E.2d 209 (county from which plane took off had an interest in protecting persons within its borders and compensating victims of accidents even though accident did not occur there).

As for the public-interest factor of court congestion, ICC concedes that the court docket in Cook County is more congested than that in Madison County. Congestion of the court's docket, or lack of it, is a relevant factor in deciding a *forum non conveniens* motion (*Bjurstrom v. Commonwealth Edison Co.* (1986), 144 Ill. App. 3d 743, 748-49, 494 N.E.2d 801, 805), and the statistics prepared by the Administrative Office of the Illinois Courts are proper evidence of such congestion (see *Boston v. Rockford Memorial Hospital* (1986), 140 Ill. App. 3d 969, 975, 489 N.E.2d 429, 434). Preliminary statistical data compiled by the Administrative Office of the Illinois Courts show the following with regard to law jury cases over $15,000 terminated by verdict in the circuit courts during 1991, 1992, and 1993:

|  | 1991 | 1992 | 1993 |
|---|---|---|---|
| Madison | 40.1 mos. | 19.9 mos. | 27.7 mos. |
| Cook | 70.9 | 64.1 | 56.7 |
| Difference | 30.8 | 44.2 | 29.0. |

It is evident that it takes considerably longer to bring a law jury case to verdict in Cook County than in Madison County. In fact it took, on the average, 34.6 months longer to bring a case to verdict in Cook County between 1991 and 1993 than in Madison County. Thus, it is clear that if transferred to Cook County plaintiff will be forced to wait considerably longer for a trial than if the case remains in Madison County.

Defendant argues that court congestion is the least significant of the public-interest factors. (*Kwasniewski v. Schaid* (1992), 153 Ill. 2d 550, 555, 607 N.E.2d 214, 216.) While court congestion *per se* may be on the low end of the public-interest rating, we need not ignore the ramifications flowing from it that affect the public interest. It does not take a genius to realize that the further away one is removed from filing-to-verdict the greater the chance that witnesses will be lost and evidence will be more difficult to secure. Other emanations of court congestion are the economic realities of delay in bringing a case to verdict.

Every first-year law student learns that if you represent the plaintiff, the sooner you can collect the judgment the better off you are; if you represent the defendant, an economic advantage is usually gained by delaying as much as possible. A simple illustration to demonstrate: Suppose plaintiff files suit on January 1, 1990. Further assume that eventually plaintiff will win a verdict of $100,000. If the case is brought to trial and judgment is entered on January 1, 1991, plaintiff will begin earning 9% per annum while the case is on appeal. Computed at the statutory rate of 9% (735 ILCS 5/2—1303 (West 1992)), over five years plaintiff will have $145,000 by January 1, 1996. For every day after January 1, 1991, that the judgment is not collected, the actual amount earned by January 1, 1996, will decrease.

Opponents may argue that the time from verdict to collection of the judgment is irrelevant because plaintiffs are entitled to interest earned on the judgment as provided by statute, but (1) for every day the judgment is not collected, plaintiff is denied the use of the money, and (2) plaintiff does not begin to earn a statutorily determined rate of interest on the verdict until *it is in fact a verdict*. That is, delay between the time of filing the complaint and the date of verdict plays to the defendant's advantage. Once again, using $100,000 as a predicted verdict, if the defendant sets aside $100,000 in a fund which earns interest at 9%, defendant could earn $27,000 on the $100,000 given a three-year delay between time of filing the complaint and the date of verdict. Thus, by the time a verdict is reached, the amount defendant owes is reduced by over 25%.

Digressing back to law school again, fledgling plaintiffs' lawyers are taught that if you have a choice of venue, file suit in the forum that is more likely to result in a greater award for your client. Not only will you do your client a disservice by not filing where the recovery is apt to be greater (not to mention the disservice to yourself assuming a contingency fee), but a strong case for legal malpractice could be made if you purposefully neglect to consider the economic advantages of filing in one forum as opposed to another. Plaintiffs' lawyers are, of course, not the only ones "shopping" for the best deal. Budding defense lawyers are trained to avoid certain fora like the plague. Statistical analyses are readily available to determine where the verdicts are prone to be high or low given the type of case involved. While there is authority that *forum non conveniens* motions are a tool for judges to use to discourage plaintiffs from jockeying for sympathetic juries (see *Torres v. Walsh* (1983), 98 Ill. 2d 338, 351, 456 N.E.2d 601, 607), the fact is that defense lawyers are just as likely to jockey for unsympathetic juries. Although this maneuvering has been criticized and characterized as "incessant forum shopping," in the real world of litigation it is done not only by plaintiffs but also by defendants, and it is appropriately done by both. The point is that both plaintiff lawyers and defense lawyers are properly looking out for their clients' best interests in their choices of fora and justifiably so. What then should be the guiding star when courts are faced with *forum non conveniens* motions?

Development of the doctrine of *forum non conveniens* was based on the notion that a court may resist imposition upon its jurisdiction where it becomes apparent that the plaintiff's choice of forum was part of a strategy to force the defendant to try the case at a most *inconvenient place*, even if the plaintiff himself was inconvenienced. (See *Gulf Oil*, 330 U.S. at 507, 91 L. Ed. at 1062, 67 S. Ct. at 842.) The court recognized that the general venue statute opened the door to those who sought not simply justice but perhaps justice blended with some harassment. (*Gulf Oil*, 330 U.S. at 507, 91 L. Ed. at 1062, 67 S. Ct. at 842.) The implication of the court's insight is that a court may grant a motion to transfer based on *forum non conveniens* where the plaintiff's chosen venue is determined to be harassment and prejudicial to the defendant because of that harassment. On this note, it appears that in every other area of the law, where there is a reversal, the appealing party has demonstrated prejudice. We submit that to overcome the presumption that plaintiff's choice of forum is proper, defendant must demonstrate that denial of its motion to transfer venue will prejudice it. This is not a revolutionary idea, because defendant, as the movant, has always had the burden to prove that

plaintiff's selection of venue was improper. (*Weaver v. Midwest Towing, Inc.* (1987), 116 Ill. 2d 279, 285, 507 N.E.2d 838, 840.) In so doing, defendant must set out specific facts, not conclusions, and show a clear right to the relief asked for. (*Weaver*, 116 Ill. 2d 279, 507 N.E.2d 838.) In the case at bar, defendant has not demonstrated prejudice. Moreover, our evaluation of the public- and private-interest factors shows that plaintiff would be more inconvenienced by a trial in Cook County than defendant would be inconvenienced by a trial in Madison County.

Resolution of a *forum non conveniens* motion rests within the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent an abuse of discretion. (*Meyers v. Bridgeport Machines Division of Textron, Inc.* (1986), 113 Ill. 2d 112, 118, 497 N.E.2d 745, 747.) We cannot find that the trial court abused its discretion.

Because we affirm the decision of the trial court, we need not discuss the final issue raised on appeal: whether the doctrine of intrastate *forum non conveniens* is viable in Illinois. Although this court's decision in *Peile v. Skelgas, Inc.* would suggest an alternative approach to affirming the instant matter, we will decline to further discuss the theory that intrastate *forum non conveniens* is dead because *Peile* is currently before the Illinois Supreme Court. *Peile v. Skelgas, Inc.* (1993), 242 Ill. App. 3d 500, 610 N.E.2d 813, *appeal pending*, No. 75558 (petition for certificate of importance granted by appellate court on May 25, 1993, pursuant to Supreme Court Rule 316 (134 Ill. 2d R. 316)).[1]

We affirm the trial court's denial of ICC's motion to transfer venue from Madison County.

Affirmed.

RARICK and WELCH, JJ., concur.

---

[1]See 163 Ill. 2d 323 (1994).